UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| DERRICK TALBOTT, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 5:21-cv-05133 |
| : | |
| CREDIT ACCEPTANCE CORP., : | |
|     Defendant : | |

_____

**O P I N I O N**
**Defendant's Motion to Dismiss, ECF No. 11 – Granted in Part and Denied in Part**
**Plaintiff's Motion for Summary Judgment, ECF No. 13 – Denied**

**Joseph F. Leeson, Jr.**                                                                                **October 3, 2022**
**United States District Judge**

I.     **INTRODUCTION**

        Plaintiff Derrick Talbott initiated the above-captioned action against Defendant Credit Acceptance Corporation for allegedly unlawful behavior in the collection of a loan. Credit Acceptance seeks to enforce an arbitration provision in the loan contract and to dismiss the Complaint because all claims are subject to arbitration or, in the alternative, to stay the proceedings pending the outcome of arbitration. Talbott opposes the motion. This Court notified the parties of its intent to consider the motion to dismiss under the summary judgment standard. For the reasons set forth below, Talbott must proceed through arbitration and the matter is stayed pending arbitration.

II.     **BACKGROUND**

        On January 25, 2018, Derrick Talbott (buyer) entered into a signed Retail Installment Contract with Paxton Associates, Incorporated (creditor-seller) for the purchase of a used 2008 Honda Accord. *See* Contract, ECF No. 11 at Ex. 1. On page 4 of 5 of this Contract, Paxton

Associates assigned its interest to Credit Acceptance (assignee). *See id.* 4. The Assignment provision gives Credit Acceptance "full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract." *See id.* The Notice of Assignment specifies that Talbott must make all future payments to Credit Acceptance. *See id.*

The Contract includes an Arbitration Clause. The first page of the Contract provides:

> **ARBITRATION:** This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this Contract for the full terms and conditions of the agreement to arbitrate. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Arbitration Clause.

*Id.* at 1. Talbott initialed[1] the box immediately below this statement, as well as signing and/or initialing each page of the Contract. *See id.* The "Agreement to Arbitrate" on page 5 of the Contract provides, in pertinent part:

> . . . In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation)
> . . .
> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.
> . . .
> Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a

---

[1] Although the Contract contains electronic signatures and initials, Talbott physically signed a Declaration Acknowledging Electronic Signature Process, stating, *inter alia*, that he "consented to use electronic signatures to sign all documents necessary to process a retail installment transaction . . . [and] was in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied [his] e-signature to the documents with the intent to sign the documents as if [he] provided [his] handwritten signature on the documents." *See* E-sign Declaration, ECF No. 11 at Ex. 2.

> Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration.
> . . .
> If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute.
> . . .
> . . . We retain the right to repossess the Vehicle upon Your default.
> . . .
> It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

*Id.* at 5. The Agreement informed Talbott of his right to reject the Arbitration Clause, of what the written rejection notice must contain, of the address to send the rejection notice, and of the thirty-day time limit to reject the Arbitration Clause. *See id.* On January 25, 2018, Talbott also signed a "Credit Acceptance Corporate Disclosure Form" acknowledging that he read and understood the terms of the Contract, including that the Contract would be assigned to Credit Acceptance. *See* Disclosure Form, ECF No. 11 at Ex. 3.

On November 16, 2021, Talbott filed a Complaint against Credit Acceptance in the above-captioned action. He alleges that a representative of Credit Acceptance reached out to him to make payment arrangements, but that one or more representatives made him feel scared and threatened that his car would be taken away. *See* Compl. 2, ECF No. 1.[2] Talbott alleges that he asked Credit Acceptance to validate the debt, asserting it was not owned by Credit Acceptance but was assigned. *See id.* 3. He further contends that "Credit Acceptance has been extorting monies with threats and violence" and that "payments being made of the promissory note or securities are theft of public funds." *See id.* 4. Talbott identifies the causes of action as violations of the Truth in Lending Act ("TILA") and of contract laws, and a liberal construction[3]

---

[2]   This Court uses the pagination assigned by the Electronic Filing System.
[3]   *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that *pro se* pleadings are to be "liberally construed").

of the pro se Complaint also reveals claims under the Fair Debt Collection Practices Act ("FDCPA").

Credit Acceptance filed a Motion to Dismiss the Complaint arguing that all claims are subject to binding arbitration.  *See* Mem., ECF No. 11.  Credit Acceptance asks that the Complaint be dismissed or, in the alternative, the Court stay the proceedings pending the outcome of arbitration.  *See id.* 1, n.1.  Attached to the motion is the declaration of Megan VanLeuven, a Legal Assistant in Credit Acceptance's Corporate Legal Department, stating that she reviewed and was familiar with the records of Credit Acceptance relating to the subject account.  *See* Dec., ECF No. 11 at Ex. A.  VanLeuven declared that after review, she found no evidence of a rejection notice from Talbott.  *See id.*

In response, Talbott filed a motion to deny the request for dismissal and to grant his motion for summary judgment.  *See* Resp., ECF No. 13.  Talbott does not allege that he rejected the arbitration agreement; rather, he asserts that Credit Acceptance is a fictious entity and does not have a valid security interest under the contract.  *See id.*  Credit Acceptance filed a reply arguing that Talbott offers nothing to overcome the binding arbitration agreement and that summary judgment is procedurally improper and should be denied.  *See* Reply, ECF No. 14.  Both parties attached to their motions, copies of the Contract and related documents.

This Court subsequently issued an Order notifying the parties of its intent to convert the Motion to Dismiss into one for summary judgment and providing them with an opportunity to present any evidence or argument to dispute that Talbott did not return the required rejection notice or to contest the validity of the agreement to arbitrate.  *See* Order, ECF No. 17 (explaining that although Talbott filed a motion for summary judgment, it was not clear he fully understood the Rule 56 standard and, further, that although a motion to compel arbitration may be

considered under either the motion to dismiss or the summary judgment standard, Credit Acceptance did not frame its motion as one to compel arbitration).

In response, Talbott asserts, *inter alia*,[4] that he did not reject the Arbitration Clause because he was unaware of the nature of contract laws and did not intelligently enter into the Contract. *See* Supp. Resp. ECF No. 18. For this reason and because Talbott was allegedly under duress because he "desperately needed a car for work," he argues that the Contract was an unconscionable adhesion contract. *See id.* Talbott contends that although he signed the Disclosure Form acknowledging that he read and understood the terms of the Contract, he did not in fact read and understand the Contract terms. *See id.* Credit Acceptance filed a reply asserting that Talbott's perceived duress and failure to read the Contract do not impact the enforceability of the Arbitration Clause. *See* Supp. Reply, ECF Nos. 19, 21.

For the reasons set forth below, the Motion to Dismiss is granted to the extent it seeks to compel arbitration and denied to the extent it seeks dismissal; rather, the case will be stayed pending arbitration.

**III.    STANDARDS OF REVIEW**

    **A.    Motion to Compel Arbitration – Review of Applicable Law**

"It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted). "Before

---

[4]    This Court has considered all of Talbott's arguments in deciding the pending motions, despite the fact that one of his supplemental responses was filed out of time and without leave of court. *See* ECF No. 20. This Opinion will not, however, address any new causes of action that might be alleged in the out-of-time response and the Court offers no opinion as to the timeliness or sufficiency of any such claims. Regardless, the additional causes of action are also subject to the Arbitration Clause for the reasons discussed herein.

compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009).

To determine whether there was a valid arbitration agreement, the court applies state-law principles of contract formation. *See Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599-600 (3d Cir. 2020). Under Pennsylvania law, the court considers: "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Atacs Corp. v. Trans World Communs.*, 155 F.3d 659, 666 (3d Cir. 1998). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "A party opposing a motion to compel arbitration bears the burden of proving the arbitration clause unenforceable." *Antkowiak v. Taxmasters*, 455 F. App'x 156, 159 (3d Cir. 2011) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). "All reasonable inferences from the evidence are to be granted to the party opposing arbitration." *Antkowiak*, 455 F. App'x at 159.

In deciding whether to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56. *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 732 (E.D. Pa. 2013). If arbitrability is not apparent on the face of the complaint or if the non-moving party has "come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, . . . the issue should be judged under the Rule 56 standard." *Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted). The summary judgment

standard is also applied if the parties rely on factual evidence outside the pleadings in arguing that arbitration is or is not appropriate. *See Smeck v. Comcast Cable Communs. Mgmt., LLC*, No. 19-cv-3625-JMY, 2020 U.S. Dist. LEXIS 221526, at *8 (E.D. Pa. Nov. 25, 2020).

        **B.**        **Motion for Summary Judgment under Rule 56 - Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257. The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

IV.     ANALYSIS

    A.     **The request to compel arbitration is granted.**

First, the Court finds there was an agreement to arbitrate. The electronic signatures used here are sufficient to indicate the parties' intent to be bound by the Contract. *See Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019) ("Pennsylvania, as most jurisdictions, recognizes the e-signature as a valid means to register legal assent."). Using his electronic signature, Talbott signed or initialed every page of the Contract. *See* Contract. Although Paxton Associates, Inc. is the seller identified in the Contract, the Contract makes clear it is binding on the seller's assignee. *See, e.g.* Contract at 1. The Contract includes a Notice of Assignment stating that the "Seller has assigned this Contract to Credit Acceptance. . . ." *See* Contract at 4. Credit Acceptance therefore has the same rights under the Contract as Paxton Associates had, including the right to enforce the arbitration agreement. *See Ciotola v. RSA Ins. Grp., PLC*, No. 3:21-1020, 2022 U.S. Dist. LEXIS 10920, at *25-26 (M.D. Pa. Jan. 20, 2022) (explaining that "under Pennsylvania law, an assignee stands in the shoes of the assignor with regards to the right or duty assigned" (internal quotations omitted)).

In response to Credit Acceptance's attempt to enforce the arbitration agreement, Talbott now asserts that despite signing the Contract, including the "Agreement to Arbitrate" page, and the Disclosure Form confirming that he read and understood the terms of the Contract, he did not in fact read and understand its terms. However, a "contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875). "Indeed, if all it took to avoid a signed contract was to claim ignorance of its content or legal effect, 'contracts would not be worth the paper on which they are written.'" *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d

386, 403 (3d Cir. 2020) (quoting *id.*).  "It is the law in Pennsylvania that failure to read a contract is not an excuse and does not nullify a contract."  *Martinez v. Skirmish, U.S.A., Inc.*, No. 07-5003, 2009 U.S. Dist. LEXIS 51628, at *14 (E.D. Pa. June 15, 2009) (citing *Standard Venetian Blind Co. v. Amer. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).  Similarly, contracts are binding under Pennsylvania law "without regard to whether the terms were fully understood by [the signer]."  *Simeone v. Simeone*, 581 A.2d 162, 166 (Pa. 1990) ("Ignorantia non excusat.").  Talbott's failure to read and understand the Contract is therefore not a basis to not enforce its terms.  *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008) (enforcing an arbitration clause despite the contracting party's claim that he did not read or understand the contract because it was his "obligation to ensure he understood the Agreement before signing" and his "signature manifested his assent to the entire Agreement").

Talbott's suggestion that he was under duress when he signed the Contract because he "desperately needed a car for work" is equally untenable.  "[E]conomic duress is present only if the defendant 'brings about the state of financial distress in which plaintiffs [find] themselves at the time of signing.'"  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 911 (3d Cir. 1985) (quoting *Litten v. Jonathan Logan, Inc.*, 286 A.2d 913, 917 (Pa. Super. 1977)).  Credit Acceptance had no involvement in creating Talbott's need for a car.  Moreover, because Talbott had a right to reject the Arbitration Clause, the Contract is not one of adhesion, nor is the arbitration agreement procedurally unconscionable.  *See Stephenson v. AT&T Servs.*, No. 21-0709, 2021 U.S. Dist. LEXIS 153021, at *21 (E.D. Pa. Aug. 13, 2021).

The Court also finds that there was consideration for the Contract, the arbitration agreement contained on a separate page was a conspicuous part thereof, and its terms were clear and definite.  *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both

parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *Soroko v. ATMOS, Inc.*, No. 11-6120, 2015 U.S. Dist. LEXIS 127317, at *16 (E.D. Pa. Sep. 23, 2015) (finding that the terms of the arbitration agreement were sufficiently definite to be enforced because the parties certainly intended to make an employment contract, the agreements provided a basis for employment, and there was a certain basis for a court to provide a remedy under the arbitration provisions).

Additionally, the claims at issue fall within the scope of the Arbitration Clause. The arbitration agreement applies to "any controversy or claim" between Talbott and Credit Acceptance "arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract . . . ." Contract at 5. Talbott challenges Credit Acceptance's authority to collect as an assignee and complains that representatives of Credit Acceptance contacted him to make payment arrangements, making him feel scared and threatening to take away his car. Clearly these claims arise out of or are related to the Contract. *See Herndon v. Green Tree Servicing LLC*, No. 4:15-cv-01202, 2016 U.S. Dist. LEXIS 53937, at *16 (M.D. Pa. Apr. 22, 2016) (enforcing the arbitration agreement in a Retail Installment Contract against the assignee/debt-collector as to claims that the debt collector violated the law in its collection attempts after the plaintiff fell behind on payments).

Credit Acceptance's request to enforce arbitration is granted.

**B.     The action is stayed pending arbitration.**

Although § 3 of the FAA requires that a court stay an action pending arbitration only where a party has requested a stay, § 7304(d) of the Pennsylvania Arbitration Act ("PAA") requires a stay of judicial proceedings where an issue is referred to arbitration. *See Kauffman v.*

*U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2018 U.S. Dist. LEXIS 145717, at *32-33 (E.D. Pa. Aug. 27, 2018).  Accordingly, because Talbott has alleged both federal and state-law claims, the above-captioned action must be stayed pending resolution of arbitration.  *See Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. 19-83, 2019 U.S. Dist. LEXIS 79387, at *15 (E.D. Pa. May 10, 2019) (stating that if the complaint only raised federal claims and neither party moved for a stay pending arbitration, the court could dismiss the case, but because there was also an alleged violation of state law, the PAA required a stay).  Credit Acceptance's request for dismissal is denied, but its alternative request for a stay is granted.

## V.     CONCLUSION

Talbott voluntarily entered into a contract for the purchase of a vehicle, which contained a valid arbitration agreement.  His claim that Credit Acceptance, who has a right to enforce the agreement because he was assigned the seller's interest in the Contract, violated his rights during its attempt to collect on the debt fails under the scope of the arbitration agreement.  Credit Acceptance's motion to enforce the arbitration agreement is therefore granted.  Due to the presence of state-law claims, the above-captioned case is stayed pending resolution of arbitration.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
