UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

DERRICK TALBOTT,                  :
        Plaintiff,                :
                                  :
    v.                            :   No. 5:21-cv-5133
                                  :
CREDIT ACCEPTANCE CORP.,          :
        Defendant                 :
_____

**O P I N I O N**
Plaintiff's Motion to Vacate Arbitration Award, ECF No. 34 - Denied
Defendant's Cross-Motion to Confirm Arbitration Award, ECF No. 35 - Granted
Plaintiff's Motion to Strike Defendant's Cross-Motion, ECF No. 37 - Denied

**Joseph F. Leeson, Jr.**                                                                 November 7, 2023
**United States District Judge**

### I.    INTRODUCTION

Plaintiff Derrick Talbott initiated the above-captioned action against Defendant Credit Acceptance Corporation for allegedly unlawful behavior in the collection of a loan he obtained to purchase a car.  The loan is governed by the Retail Installment Contract, which contains an arbitration agreement.  This agreement was found to be valid and enforceable by this Court and the case was stayed pending resolution of arbitration.  The arbitration proceedings are now concluded.  The parties have filed cross-motions to vacate and to confirm the arbitration award.  For the reasons set forth below, the award is confirmed.

### II.    BACKGROUND

#### A.    The Contract, Complaint, and Opinion Enforcing Arbitration Agreement

On January 25, 2018, Talbott entered into a signed Retail Installment Contract for the purchase of a used 2008 Honda Accord with Paxton Associates, Incorporated, which assigned its

interest to Credit Acceptance. *See* Contract, ECF No. 11 at Ex. 1. Credit Acceptance, after Talbott made some but not all payments, attempted to collect what was due under the Contract. The Contract includes an Arbitration Clause and an Agreement to Arbitrate providing that the parties agree to resolve all disputes related to the Contract by binding arbitration. *Id.* at 1, 5. The Agreement to Arbitrate provides that the "Arbitration Clause is governed by the FAA [Federal Arbitration Act] and not by any state arbitration law." *Id.* at 5.

On November 16, 2021, Talbott filed a Complaint against Credit Acceptance in the above-captioned action alleging that when Credit Acceptance contacted him to make payment arrangements, its representatives made him feel scared and threatened that his car would be taken away. *See* Compl. 2,[1] ECF No. 1. The Complaint alleges that "Credit Acceptance has been extorting monies with threats and violence" and that "payments being made of the promissory note or securities are theft of public funds." *See id.* 4. The claims include alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1681 *et seq.*; and contract laws.

In an Opinion dated October 3, 2022, this Court found that Talbott intended to be bound by the Contract, which was supported by adequate consideration, and that Credit Acceptance had the same rights under the Contract as Paxton Associates. *See* Opn. 8-9, ECF No. 22. This Court, rejecting Talbott's suggestion that he did not read and understand the Contract's terms or that he was under economic duress when it was signed, concluded that the Contract contained a valid and enforceable agreement to arbitrate covering all the claims at issue in this action. *See id.* 8-10. Credit Acceptance's motion to enforce the arbitration agreement was therefore granted and the case stayed pending arbitration.

---

[1] This Court uses the pagination assigned by the Electronic Filing System.

B.     **Arbitration Proceedings and Award**

In November 2022, Talbott filed a demand for arbitration and statement of claims against Credit Acceptance with the American Arbitration Association ("AAA"), Case No. 1-22-0004-7355.  *See* Demand, Ex. A, ECF No. 35.  In his claim and other submissions, Talbott alleged violations of the FDCPA; TILA; Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*; Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*; Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*; Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*; Fair Credit Billing Act ("FCBA"), 15 U.S.C. §§ 1666–1666j; Emergency Banking Relief Act, 12 U.S.C. § 95; Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*; common law breach of contract; and an unspecified statutory duty to validate the amount of money allegedly owed.  *See* Award, Ex. H, ECF No. 35; Pl.'s Memo, Ex. C, ECF No. 35.

These claims were answered by Credit Acceptance in December 2022 when it filed its answer, with affirmative defenses and counterclaim.  *See* Answer, Ex. B, ECF No. 35.  The counterclaim asserted that Talbott had breached the Contract when he failed to make required monthly payments under the Contract.  *Id.*  Credit Acceptance sought the remaining balance owed on the Contract, along with attorneys fees and costs.  *Id.*

Pursuant to the Consumer Arbitration Rules of the American Arbitration Association, a telephone Preliminary Management Hearing was held on April 13, 2023, before Arbitrator John E. Kelly with, *inter alia*, Talbott and counsel for Credit Acceptance.  *See* Sch. Order #1, Ex. D, ECF No. 35.  The parties agreed that since the claims did not exceed $25,000, the case would proceed pursuant to the Procedures for the Resolution of Disputes through Document

Submission.  *See id.*  The Arbitrator set deadlines for the parties to submit their claims, arguments, exhibits, and responsive documents.  *See id.* (Talbott's initial submission with exhibits was due May 11, 2023; Credit Acceptance's response submission with exhibits was due June 15, 2023; Talbott's reply submission with exhibits was due July 6, 2023).  After receipt and review of the parties' submissions, *see* Exs. E-G, ECF No. 35, the Arbitrator issued a decision on July 17, 2023, *see* Award, Ex. H, ECF No. 35.

In the written decision, the Arbitrator reviewed each of Talbott's claims.  As to the alleged violations of RICO, FCRA, the Gramm-Leach-Bliley Act, the Sherman Antitrust Act, EEOC, and EFTA, the Arbitrator denied these claims after determining that Talbott had "presented no or insufficient facts, evidence and legal authority regarding violation of these statutes."  *See* Award.  The Arbitrator then addressed Talbott's remaining claims separately.  *See id.*  The Arbitrator explained why the FCBA, FDCPA, and EBRA do not apply to the facts of this case and denied these claims.  *See id.*  He similarly distinguished the protections afforded by the TILA and UTCPL from the facts of this case.  *See id.*  The Arbitrator denied these claims because there were no violations and, also, because the one-year statute of limitations for bringing a TILA claim expired in 2019 and, as to the UTCPL claim, Talbott has not suffered an ascertainable monetary loss.  *See id.*  Since Talbott did not suffer any damages and Credit Acceptance has not violated the terms of the Contract, the breach of contract claim was denied.  *See id.*  The Arbitrator also denied Talbott's final claim for debt validation, explaining that Talbott cited no specific statute in connection with this claim, nor provide any evidence that Credit Acceptance's full statement of account detailing all payments allegedly made and the amount which allegedly remains unpaid was inaccurate.  *See id.*

The Arbitrator further considered Credit Acceptance's counterclaim. *See id.* The Arbitrator found "that Talbott failed to make payments in accordance with his closed-end installment contract and that pursuant to the terms of the contract [Credit Acceptance] lawfully accelerated the total amount of unpaid payments owing in the total amount due of $1,959.47." *Id.* The Arbitrator granted Credit Acceptance's claim for $1,959.47, but denied its request for interest, fees, costs, and attorneys' fees. *See id.* The Award dated July 17, 2023, provides:

1. The Claim of Claimant Derrick Talbott as against Respondent Credit Acceptance Corporation is hereby Denied in its entirety.
2. The Counterclaim of Respondent Credit Acceptance Corporation is Granted in part and Denied in part. Claimant Derrick Talbott shall pay Respondent-Counterclaimant Credit Acceptance Corporation the total amount of one thousand nine hundred fifty-nine dollars and forty-seven cents ($1,959.47) which shall be paid on or before 30 days from the date of this Award.

The administrative fees of the American Arbitration Association (AAA) totaling $1,900 shall be borne as incurred, and the compensation of the arbitrator totaling $1,500 shall be borne as incurred.

The above sums are to be paid on or before 30 days from the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

*Id.*

**C.    Cross-Motions to Vacate and Confirm the Arbitration Award**

On August 16, 2023, in the above-captioned case, Talbott filed to a motion to vacate the arbitration award. *See* Mot. Vacate, ECF No. 34 (relying on the grounds in 9 U.S.C. §§ 10(a)(3)-(4)). Credit Acceptance filed a response in opposition and cross-motion to confirm the arbitration award. *See* Mot. Confirm, ECF No. 35. *See also* Contract at 5 ("Judgment on the arbitration award may be entered in any court with jurisdiction."). Talbott thereafter opposed and moved to strike Credit Acceptance's cross-motion to confirm the arbitration award. *See* Mot. Strike, ECF No. 37. Credit Acceptance has filed a response. *See* Resp., ECF No. 39.

**III.     STANDARD OF REVIEW – Arbitration Award: Review of Applicable Law**

Pursuant to the FAA, "any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  "The FAA not only authorizes, but mandates, that district courts confirm arbitration awards by converting them into enforceable judgments through a summary proceeding." *Teamsters Local 177 v. UPS*, 966 F.3d 245, 248 (3d Cir. 2020) (internal quotations omitted).  "Confirmation is the process through which a party to arbitration completes the award process under the FAA, as the award becomes a final and enforceable judgment." *Id.*

"There is a strong presumption under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. UMW*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, (1983)).  A "party moving to vacate an arbitration award pursuant to FAA Section 10 immediately bears the burden of proof." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 314 (3d Cir. 2021). The FAA enumerates four[2] narrow grounds for vacating an award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

---

[2]     Under an additional "exception to the general rule, a court may vacate an award if it violates a 'well defined and dominant' public policy, discerned 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) (quoting *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 766 (1983)).

material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;[3] or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[4]

9 U.S.C. § 10(a).  The courts have recognized two additional grounds for vacating an arbitration award: (1) public policy[5] and (2) manifest disregard of federal law.[6]  However, the continued vitality of these doctrines is in question since the Supreme Court's decision in *Hall Street*.  *See Caputo v. Wells Fargo Advisors, LLC*, No. 20-3059, 2022 U.S. App. LEXIS 12420, at *5 n.11 (3d Cir. May 9, 2022) ("[W]e have not yet weighed in on whether these grounds for vacatur

---

[3]    Under § 10(a)(3), an arbitrator's error alone is insufficient to vacate an award, unless the error was "in bad faith or so gross as to amount to affirmative misconduct." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987).

[4]    "A party seeking relief under [§ 10(a)(4)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).  Error, "even a serious error," is insufficient to vacate an arbitrator's decision under § 10(a)(4).  *Id.* (citing *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).  "[A]s long as an honest arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision."  *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 59 (2000).  "So the sole question for [the court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  *Oxford Health Plans LLC*, 569 U.S. at 569.

[5]    *See Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) (holding that "a court may vacate an award if it violates a 'well defined and dominant' public policy, discerned 'by reference to the laws and legal precedents and not from general considerations of supposed public interests'" (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983))

[6]    "A party seeking to vacate an arbitration award based on the theory that the arbitrators manifestly disregarded the law bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Bellantuono v. ICAP Sec. USA, LLC*, 557 F. App'x 168, 174 (3d Cir. 2014) (quotation omitted). *See also Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 533 (3d Cir. 1985) ("An award may be set aside only in limited circumstances, for example, where the arbitrator's decision evidences manifest disregard for the law rather than an erroneous interpretation of the law.")

survive the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).").

## IV.   ANALYSIS

In his motion, Talbott argues the arbitration award should be vacated but fails to make any affirmative showing that the award is not valid.  Rather, he essentially just disagrees with the Arbitrator's conclusions, which is not a basis to vacate the award.  *See* Mot. Vacate 8 (complaining that the Arbitrator did not consider Talbott's argument and accepted Credit Acceptance's arguments instead); Award (considering and denying each of Talbott's claims and, as to many of the claims, explaining why the statutes did not apply to the Contract at issue); *Oxford Health Plans LLC*, 569 U.S. at 569 (holding that in deciding whether to vacate an arbitration award "the sole question for [the court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong").  Talbott's unsupported assertion that the Arbitrator failed to properly weigh the law and assess the evidence is based merely on his disagreement with the Arbitrator's conclusions about the evidence and not by any affirmative showing of how or why such conclusions were incorrect or that the Arbitrator knew the correct law and refused to apply it.  *See Bellantuono*, 557 F. App'x at 174.

Talbott further complains that he was denied due process because he was not allowed to present evidence, to call and cross examine witnesses, or to see and question opposing evidence; but this argument is belied by the record.  During a preliminary management hearing, Talbott agreed the case would proceed pursuant to the Procedures for the Resolution of Disputes through Document Submission.  *See* Sch. Order #1.  Consistent with these Procedures, the Arbitrator set deadlines for the submission of documents, including Talbott's initial submission with exhibits, Credit Acceptance's response with exhibits, and Talbott's reply with exhibits.  *See id.*; Procedure

E-6 of the AAA Commercial Arbitration Rules and Mediation Procedure ("AAA Rules" or "AAA Procedure").  These documents were submitted and exchanged in accordance with AAA Procedure, which allows for resolution through document submission and directs the arbitrator "to establish a fair and equitable procedure for the submission of documents."  *See* AAA Procedure E-6(a).  The Arbitrator's scheduling order, which allowed sufficient time for Talbott to make an initial submission and, after receipt of Credit Acceptance's response, to file a reply submission was fair and equitable.  *See, e.g.* Procedure E-5 (providing, in cases needing a hearing, that "[a]t least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing").  Talbott's argument that his request for documentary evidence was ignored is unsupported as he fails to allege what evidence he requested and was allegedly denied or, more importantly, that he had shown good cause for disclosure of the evidence.  *See* AAA Procedure E-5(b) (providing that no discovery other than the parties' exhibits is "permitted except as allowed by the arbitrator for good cause shown").  Consequently, Talbott's suggestion that he was denied due process by not being allowed to present and challenge evidence lacks merit.

Also lacking in merit is Talbott's suggestion that the award violates public policy.  He quotes a 1939 Supreme Court case and, misapplying the law, suggests that the Contract and requiring him to repay the loan in cash violates public policy.  He seemingly argues that because he did not receive money from Credit Acceptance that he may not be required to pay money.

Finally, Talbott continues to disagree with this Court's decision dated October 3, 2022, finding, *inter alia*, that the arbitration agreement was valid and enforceable.  However, the instant motion is not an opportunity for him to relitigate such issues.  *See George v. Rushmore Serv. Ctr., LLC*, No. 2:18-CV-13698 (WJM), 2023 U.S. Dist. LEXIS 94355, at *4-5 (D.N.J. May

30, 2023) (refusing to consider the plaintiff's argument in his motion to vacate the arbitration award that the matter should not have been sent to arbitration because of its untimeliness). Accordingly, to the extent Talbott's motion contends that his rights "were violated at the conception of the contract," that he was not competent to contract and/or lacked understanding of the contract and agreement to arbitrate, and that the contract lacked consideration, these arguments are foreclosed by this Court's earlier decision. Any request to reconsider that Opinion approximately a year later is dismissed as untimely. *See* E.D. Pa. Local Rule 7.1(g) ("Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned. . . ."). *See also Cont'l Casualty Co. v. Diversified Indus.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995) ("Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly.").

For all these reasons, the motion to vacate the arbitration award is denied. Having denied the motion to vacate the arbitration award, this Court "must" confirm the award. *See* 9 U.S.C. § 9. Credit Acceptance's cross-motion to confirm the arbitration award is therefore granted.

## V.     CONCLUSION

Talbott misunderstands and misapplies the law in an attempt to vacate the arbitrator's decision. His arguments are essentially nothing more than a disagreement with the Arbitrator's conclusions and are insufficient to vacate the award. Talbott's motion to vacate is denied and, consequently, Credit Acceptance's motion to confirm is granted.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge